IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PETER GAKUBA,<br><br>Plaintiff,<br><br>v.<br><br>CATHERINE WRIGHT, JOHN BARWICK, and TERRY GRISSOM,<br><br>Defendants. | Case No. 3:22-CV-00668-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Peter Gakuba, a former inmate of the Illinois Department of Corrections ("IDOC"), initiated this action on April 4, 2022. (Doc. 1). The Court dismissed Gakuba's original complaint without prejudice but granted him leave to amend. (Doc. 13). About two weeks later, Gakuba filed his First Amended Complaint. (Doc. 14). Upon initial screening, the Court permitted Gakuba to proceed on three claims: (i) First and/or Fourteenth Amendment interference with access to the courts; (ii) First Amendment retaliation; and (iii) supervisor liability for facilitating, approving, or condoning a pattern or practice of misconduct under 42 U.S.C. § 1983 (as an alternative to the first two claims).[1] (Docs. 16; 20).

Gakuba alleges that Defendants Catherine Wright, John Barwick, and Terry Grissom denied him access to 18 bankers boxes full of his legal documents upon release

---

[1] The access to the courts claim is housed in Count 1 of Gakuba's First Amended Complaint. (Doc. 14, pp. 33-35). The First Amendment retaliation claim appears in Count 4. (Doc. 14, pp. 38-39). And the supervisor liability claim is presented in Count 10. (Doc. 14, pp. 43-44).

from IDOC in April 2021 because he filed numerous lawsuits against them and their coworkers. He brings the supervisor liability claim only against Barwick and Grissom. Gakuba attempted to amend his complaint for a second time, but because his proposed amended complaint contained nearly identical allegations as those already dismissed, the Court denied Gakuba leave to amend at that time. (Docs. 47; 49; 53; 63).

Now pending before the Court is a motion for summary judgment filed by Defendants Wright, Barwick, and Grissom. (Doc. 60). Gakuba did not respond.[2] For the reasons set forth below, Defendants' motion is granted.

## FACTUAL BACKGROUND

Gakuba was released from Vienna Correctional Center ("Vienna"), an IDOC facility, in April 2021. (Docs. 14; 60). At that time, Barwick served as the Day-to-Day Warden of Vienna, and Grissom worked as the Warden. (Doc. 60, ¶¶ 15-16). Wright was employed as a correctional officer at Vienna. (*Id.* at ¶ 17). Upon his release, Gakuba's personal property included 18 bankers boxes packed with documents. (*Id.*). In anticipation of his departure from Vienna, Gakuba requested to mail these boxes of accumulated legal documents to a personal attorney in Baltimore, Maryland, named

---

[2] Pursuant to Local Rule 7.1(c), Gakuba's lack of a response could be interpreted as an admission of the merits of the motion. Of course, Gakuba is a restricted filer in this Circuit and subject to a filing ban. On July 28, 2023, the Seventh Circuit Court of Appeals stated: "Unless and until Gakuba pays the appellate filing fees for appeal No. 22-3267 in full, the clerks of all federal courts in this circuit are directed to return unfiled any papers submitted either directly or indirectly by him or on his behalf." *See* Order at Doc. 20 in Case Number 22-3267 in the Seventh Circuit Court of Appeals. The Seventh Circuit further stated, "This order will be lifted immediately once Gakuba makes full payment…If Gakuba, despite his best efforts, is unable to pay in full these filing fees, no earlier than two years from the date of this order he is authorized to submit to this court a motion to modify or rescind this order." *Id.* So, even if Gakuba did file a response, it would be returned to him unfiled.

David Shapiro. (Doc. 60-1). On March 21, 2021, a mailroom clerk at Vienna informed the business administrator that Gakuba had insufficient funds within his prison account to pay for shipping himself. (*Id.*). The mailroom clerk estimated that each box would cost $63.00 to ship, producing a total cost of about $1,200.00. (*Id.*).

Equipped with this information, the business administrator emailed IDOC's budget and finance specialist to investigate who should assume the shipping costs for these boxes. (Doc. 60-2). The budget and finance specialist instructed that a postage estimate should be provided to Gakuba and Mr. Shapiro and that they were responsible for covering the postage costs, not IDOC. (*Id.*). The business administrator forwarded this response to Grissom. (*Id.*). The email was also eventually forwarded to Wright. (*Id.*).

When he departed from Vienna, Gakuba did not pay postage, nor did he take his boxes with him. (*See* Doc. 14). After his release, Gakuba left Illinois and moved to Maryland. (*Id.*). The staff at Vienna and IDOC suggested scanning the documents to Mr. Shapiro's office or sending the boxes to another Illinois facility for pick up in a more convenient location. (Docs. 14, pp. 47-48, 52; 30; 60-2). Despite these offered solutions, Gakuba and Mr. Shapiro rejected the methods other than shipping and contested having to pay the postage fee. (Docs. 14, pp. 47-48, 74-75; 30). Gakuba's boxes were stored at Vienna until Mr. Shapiro agreed to have the boxes shipped under his FedEx account. (Docs. 30, ¶ 7; 41). According to documents attached to the complaint, Mr. Shapiro agreed to do so as early as November 2021. (Docs. 14, pp. 74-75; 31-3). But a non-party litigation coordinator within IDOC, Kam Shick, asserted that no payment information had been received as of June 15, 2022. (Doc. 30, ¶ 6; *see also* Docs. 28, ¶ 4; 41). Finally, in August

2022, Gakuba's boxes were shipped and delivered to him in Baltimore. (Doc. 60-3).

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). "A genuine dispute over a material fact exists if 'the evidence is such that a reasonable jury could return a verdict' for the nonmovant." *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if it might affect the outcome of a suit under the relevant substantive law. *Ruffin-Thompkins*, 422 F.3d at 607.

The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160-61 (1970); *see also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp.*, 477 U.S. at 322-24. A moving party is entitled to judgment as a matter of law where the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323.

## ANALYSIS

**I.     Access to the Courts**

The First Amendment guarantees the right to redress the government, which includes meaningful access to the courts. *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009); *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). This right is, of course, extended to persons in prison. *Bridges*, 557 F.3d at 553. To honor this right, prison officials must provide prisoners with the necessary tools to attack their sentences and challenge the conditions of their confinement. *Id.*

To demonstrate that prison officials have violated this right, a prisoner must show deprivation of access to pursue legal claims and an actual resulting injury. *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009). In other words, to prevail in an access to the courts claim, a plaintiff must submit evidence showing that: (1) "he suffered actual injury—i.e., that prison officials interfered with his legal materials," and (2) "the interference actually prejudiced him in his pending litigation." *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013) (citing *Lewis v. Casey*, 518 U.S. 343, 348 (1996); *Lehn*, 364 F.3d at 868; and *Johnson v. Barczak*, 338 F.3d 771, 772 (7th Cir. 2003)). A plaintiff must submit evidence proving "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison condition." *Ortiz*, 561 F.3d at 671 (quoting *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006)); *see also Parker v. Evans*, 350 Fed. App'x 77, 79 (7th Cir. 2009) (no triable claim exists unless prisoner supplies evidence that "prison authorities prevented him from pursuing a nonfrivolous legal action").

Here, after Gakuba's release from custody, IDOC and Vienna staff stored and held his 18 boxes of legal documents until he retrieved the boxes himself or paid for shipment costs. Despite Gakuba's conjecture in the complaint, there is no evidence that the boxes or materials were destroyed. To the contrary, the record reveals that after Gakuba and Mr. Shapiro provided an address and billing information, the boxes were promptly shipped and delivered. Complimentary shipping of a voluminous set of legal documents does not fall within the contours of a released prisoner's constitutional right to meaningful access to the courts. *See Gaines v. Lane*, 790 F.2d 1299, 1308 (7th Cir. 1986) ("although prisoners have a right of access to the courts, they do not have a right to unlimited free postage" and "[p]rison authorities are able to make a reasonable attempt to balance the right of prisoners to use the mail[] with prison budgetary considerations" (internal quotation marks omitted)).

Even if IDOC's and Vienna's refusal to send Gakuba his legal materials without payment amounted to an interference with legal materials, Gakuba still fails to establish that the interference actually prejudiced him in his pending litigation. In his complaint, Gakuba referenced a few of his cases that relate to a collateral attack of his conviction and the conditions of his confinement, but he offers no evidence of actual prejudice or detriment in those or any of his cases. Nor is there any evidence in the record demonstrating Gakuba's inability to pursue a legitimate or nonfrivolous claim as a result of not having his legal materials shipped to him in Maryland.

Furthermore, there is no evidence in the record that Wright, Barwick, or Grissom were personally responsible for the purported constitutional deprivation. The emails in

evidence demonstrate that Vienna's mailroom clerk, business administrator, and budget and finance specialist created the plan to store the documents until Gakuba or his attorney provided payment information or agreed to a different retrieval method. The chain of emails was eventually forwarded to Grissom and Wright, but this only shows awareness of the plan, not active participation in it. Only Gakuba's allegations link Wright, Barwick, and Grissom to the alleged deprivation—this is simply not enough.

Because no evidence in the record demonstrates an actual injury or prejudice from the delays in receiving his legal materials or that Defendants were personally responsible, the Court finds that Defendants are entitled to summary judgment on Gakuba's access to the courts claim (Count 1 of the First Amended Complaint).

## II.     Retaliation

Prison officials may not retaliate against inmates for filing lawsuits against the prison. *Long v. Steepro*, 27 Fed. App'x 625, 628 (7th Cir. 2001). To prove a claim for First Amendment retaliation, a prisoner must provide evidence sufficient to allow a reasonable jury to conclude that he "engaged in protected First Amendment activity, suffered a deprivation that would likely deter future First Amendment activity, and the First Amendment activity was a motivating factor in the defendant's decision to take the retaliatory action." *Jones v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022) (quoting *Walker v. Groot*, 867 F.3d 799, 803 (7th Cir. 2017)).

Defendants argue that Gakuba has submitted no evidence he was retaliated against because he exercised his First Amendment rights (i.e., filing lawsuits against Defendants and their coworkers). Rather, the record demonstrates that Gakuba's legal

materials were held by IDOC and Vienna officials because he refused to pay for the shipping costs or collect and transport the materials himself. Moreover, a delay in sending his boxes of legal materials is not a deprivation likely to deter future First Amendment activity. Indeed, Gakuba has filed three cases in this District alone after officials within IDOC and Vienna effected the alleged deprivation.[3] The Court finds it highly unlikely that requiring someone to arrange for pick up of their legal materials or to cover their necessary shipping costs would deter anyone from filing future lawsuits in an exercise of their First Amendment rights.

There is also no evidence that Gakuba's First Amendment activities were a motivating factor in the decision to require Gakuba to retrieve or pay the shipping costs for his boxes of legal materials. Aside from speculation and allegations in the complaint, there is no evidence that Defendants knew of Gakuba's active or threatened litigation at that time. Importantly, as discussed above, there is no evidence that Defendants made or endorsed the decision to hold and store Gakuba's legal documents until he submitted a payment method for shipping. Thus, no reasonable jury could find that Defendants participated in any retaliation at all. As such, Defendants are entitled to summary judgment on Gakuba's retaliation claim (Count 4 of the First Amended Complaint).

### III. Supervisor Liability for Facilitating, Approving, or Condoning a Pattern or Practice of Misconduct under 42 U.S.C. § 1983

Lastly, Gakuba alleges that Grissom and Barwick personally knew about,

---

[3] Defendants aver that a search of Peter Gakuba on PACER yields 121 results where he is listed as Plaintiff, Petitioner, or Attorney. (Doc. 60, p. 7).

facilitated, approved, and/or condoned the constitutional violations against him. "To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Prison officials cannot be held personally liable under a theory of *respondeat superior*, but they can satisfy the personal responsibility requirement of § 1983 if the conduct causing the constitutional deprivation occurs at their direction or with their knowledge and consent. *Id.* Essentially, the supervisor defendant must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

First, there is no evidence that Barwick knew that Gakuba's legal documents were being held instead of shipped to Maryland, whereas Grissom appears to have been forwarded an email from IDOC's finance specialist regarding Gakuba's responsibility to pay for the shipping costs. On that alone, Barwick is entitled to summary judgment as to this claim. Second, as discussed above, the evidence does not establish any constitutional violation, thus, Barwick and Grissom cannot be held liable for facilitating, condoning, or turning a blind eye to such conduct. Accordingly, Defendants Barwick and Grissom are entitled to summary judgment on Gakuba's supervisor liability claim (Count 10 of the First Amended Complaint).

On this record, the Court finds that Defendants are entitled to summary judgment on all of Gakuba's active claims.

## CONCLUSION

For the reasons outlined above, the motion for summary judgment filed by

Defendants Catherine Wright, John Barwick, and Terry Grissom (Doc. 60) is **GRANTED**.

The Clerk of Court is **DIRECTED** to enter judgment and close this case.

**IT IS SO ORDERED.**

DATED:  September 5, 2024

*[signature]*

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**